**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 10-cv-02197-REB-MEH

EDRICE E. KELLEY, through her Conservators,
CELIA JUDKINS,
MARIE TAYLOR, and
JOAN SULLIVAN COWAN,

      Plaintiffs,

v.

NEAL KELLEY,

      Defendant.

---

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDERS**

---

**Blackburn, J.**

This matter came before me for a trial to the court on December 6, 2011, on plaintiff's claims of violation of the Uniform Power of Attorney Act, conversion, fraud, breach of fiduciary duty, and prima facie tort under New Mexico law as pled in her **Complaint** [#1][1] filed September 8, 2010, and perseverated in the **Final Pretrial Order Re: Claims For Declaratory Judgment** [#49] filed September 1, 2011. Both plaintiff, Edrice E. Kelley, through her conservators, Celia Judkins, Marie Taylor, and Joan Sullivan Cowan, and defendant, Neal Kelley, appeared through their respective attorneys.

Having judicially noticed all relevant adjudicative facts in the file and record of this case pro tanto; having taken judicial notice as requested by the plaintiffs during the

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

trial; having considered the stipulations of the parties; having considered the evidence educed at trial in its various forms; having determined the credibility of the witnesses; having weighed the evidence; having considered all reasons stated, arguments advanced, and the authorities cited by the parties in written and oral form; and being otherwise sufficiently advised, the court enters the following findings of fact established by a preponderance of the evidence, conclusions of law, orders, and judgment.[2]

## I. FINDINGS OF FACT

1. I have jurisdiction over the parties to this action pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

2. Venue is proper in the United States District Court for the District of Colorado under 28 U.S.C. § 1391(a)(2)..

3. Plaintiff, Edrice Kelley, who is 84 years old and in ill health, brings suit through her three daughters and co-conservators, Celia Judkins, Marie Taylor, and Joan Sullivan Cowan. Defendant is plaintiff's stepson, Neal Kelley.

4. I accept as established the following facts, to which the parties stipulated in the **Final Pretrial Order** [#49] at 4-5, filed September 1, 2011:

   a. Plaintiff Edrice E. Kelley is a citizen of the State of New Mexico.

   b. Plaintiff's co-conservator, Celia Judkins, is a resident of Arizona.

   c. Plaintiff's co-conservators, Marie Taylor and Joan Sullivan Cowan, are residents of New Mexico.

   d. Defendant is a citizen of the State of Colorado.

---

[2] Any finding of fact more properly deemed a conclusion of law, or any conclusion of law more properly deemed a finding of fact, shall be as more properly characterized.

e. Defendant is the son of plaintiff's deceased husband, Spurgeon Kelley.

f. Spurgeon Kelley died on September 8, 2009.

g. Edrice Kelley and Spurgeon Kelley were married in 1971 and remained married until Spurgeon Kelley's death.

h. Defendant Neal Kelley was a signatory along with Spurgeon Kelley and Edrice Kelley on these bank accounts with Citizens Bank, Aztec, NM, which were multiple-party accounts with right of survivorship.

I. On September 11, 2009, plaintiff was admitted to the Good Samaritan nursing home located in Aztec, NM, where she has been confined since that time.

j. During the period May, 2008, through September 12, 2009, plaintiff was not mentally competent to manage her own financial affairs.

k. On September 10, 2009, defendant withdrew the sum of one hundred and sixty thousand dollars ($160,000.00) from the savings account at Citizens Bank, Aztec, NM.

l. When defendant withdrew the $160,000, he kept $40,000 for himself and gave $40,000 each to his two sisters and brother.

m. When defendant signed the withdrawal slip of $160,000.00 from plaintiff's bank account on September 10, 2009, he knew that he was not withdrawing that sum for plaintiff's benefit.

n. In a letter dated December 4, 2009, to the attorney of the daughters of plaintiff who were seeking conservatorship over plaintiff, defendant stated that he was put on his "folks" checking/savings account several years ago

so that when they could no longer take care of their bills, defendant could pay bills for them.

o.  On January 4, 2002, Spurgeon Kelley, plaintiff, and Neal Kelley established a savings account with Citizens Bank in Aztec, New Mexico.

p.  The signature card is authentic.

q.  The Citizens Bank savings account was a multiple-party account within the definition of Chapter 45, Article 6, N.M.S.A. 1978.

r.  The ownership type of the savings account was designated as "Multiple-Party With Right of Survivorship."

s.  At the time of Spurgeon Kelley's death, Neal Kelley was a signatory on the savings account with Citizens Bank, Aztec, NM.

t.  Neal Kelley had a close relationship with his father and visited with his father and his stepmother frequently.

5.  There is no evidence that defendant committed actionable fraud in connection with the opening of the multi-party savings account in January, 2002.

6.  Defendant was designated as an owner of the account, not as a beneficiary or agent.  In addition, the account was not a payable on death ("POD") account.  **See N.M. STAT. ANN.** § 45-6-201(H) (1978).

7.  There was no evidence presented to suggest or permit an inference that plaintiff did not understand the import of creating a multi-party account to which defendant had full and unequivocal signatory authority.  All the evidence of record suggests that plaintiff and Spurgeon Kelley were fairly sophisticated in their abilities to

plan their mutual and individual financial affairs.

8.  Exhibit 49 is an affidavit which defendant executed in January, 2010, to attest to defendant's assertion that Spurgeon Kelley directed him to withdraw the money from the savings account.  Although this evidence was admitted over plaintiff's objection, I have assigned it no weight.

9.  On April 29, 1999, plaintiff executed a statutory power of attorney appointing defendant as her attorney-in-fact for all matters, including financial and health care decisions.

10.  On November 28, 2003, plaintiff executed a new statutory power of attorney appointing her natural children, Marie Taylor, Wallace Sullivan, Celia Judkins, and Joan Sullivan Cowan, as her attorneys-in-fact for all matters, including financial and health care decisions.  That document explicitly "revoke[s] all previous powers of attorney I have heretofor executed."

11.  Defendant was not aware of the 2003 power of attorney until at least November, 2009.

## II.  CONCLUSIONS OF LAW

1.  To the extent necessary, I approve, adopt, reiterate, and incorporate herein the foregoing findings of fact.

2.  New Mexico law controls my resolution of the state law claims in this diversity case.  **Erie Railroad Co. v. Tompkins**, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); **Royal Maccabees Life Insurance Co. v. Choren**, 393 F.3d 1175, 1180 (10th Cir. 2005).

3. In assessing the credibility of each witness who testified at trial, I have considered all facts and circumstances shown by the evidence that affect the credibility of the witness, including the following factors: the witness's means of knowledge, ability to observe, and strength of memory; the manner in which the witness might be affected by the outcome of the litigation; the relationship the witness has to either side in the case; and the extent to which the witness is either supported or contradicted by other witnesses or evidence presented at trial.

4. Plaintiff has asserted five causes of action against defendant under New Mexico law: (a) violation of the Uniform Power of Attorney Act; (b) breach of fiduciary duty; (c) conversion; (d) fraud; and (e) prima facie tort. Ultimately, I find and conclude that plaintiff has failed to establish any of these claims.

5. New Mexico courts recognize three forms of conversion. ***Billsie v. Brooksbank***, 525 F.Supp.2d 1290, 1296 (D.N.M. 2007). At issue here is that branch of the tort prohibiting "wrongful detention [of personal property] amounting to repudiation of the owner's rights or any exercise of dominion inconsistent with such rights." ***Id.*** (quoting ***Case Credit Corp. v. Portales National Bank***, 966 P.2d 1172, 1175 (N.M. 1998)).

6. Plaintiff contends that, at the time defendant withdrew the $160,000 on September 10, 2009, following the death of Spurgeon Kelley, she was the owner of the entirety of the funds in the account. This argument is premised on **N.M. STAT. ANN.** § 45-6-212 (1978), which provides that

> [e]xcept as otherwise provided in this part, on death of a
> party sums on deposit in a multiple-party account belong to

> the surviving party or parties. If two or more parties survive
> and one is the surviving spouse of the decedent, the amount
> to which the decedent, immediately before death, was
> beneficially entitled under Section 45-6-211 NMSA 1978
> belongs to the surviving spouse.

**N.M. STAT. ANN.** § 45-6-211(B) (1978), in turn, provides that

> [d]uring the lifetime of all parties, an account belongs to the
> parties in proportion to the net contribution of each to the
> sums on deposit, unless there is clear and convincing
> evidence of a different intent. As between parties married to
> each other, in the absence of proof otherwise, the net
> contribution of each is presumed to be an equal amount.

7. Plaintiff's arguments in this regard, however, are insupportable. Pursuant to **N.M. STAT. ANN.** § 45-6-206 (1978),

> [t]he provisions of Sections 45-6-211 through 45-6-216
> NMSA 1978 concerning beneficial ownership as between
> parties or as between parties and beneficiaries apply only to
> controversies between those persons and their creditors and
> other successors, and do not apply to the right of those
> persons to payment as determined by the terms of the
> account.

Defendant was not a creditor or a successor with respect to the account. His rights in the account were not affected by the death of Spurgeon Kelley.

8. Under the Uniform Probate Code as adopted and incorporated in New Mexico, a multi-party account is an "account payable on request to one or more of two or more parties, whether or not a right of survivorship is mentioned." **N.M. STAT. ANN.** § 45-1-201(E) (1978). A "party" is "a person who, by the terms of the account, has a present right, subject to request, to payment from the account other than as a beneficiary or agent." **N.M. STAT. ANN.** § 45-1-201(F) (1978).

10. As a party to the account, defendant was entitled to withdraw all or any

portion of the money in the account at any time, including after the death of Spurgeon Kelley, without regard to his own or any other party's net contributions to the account.

11. Thus, defendant is not liable to plaintiff for conversion under New Mexico law.

12. Nor has plaintiff proven her claim that defendant committed fraud in representing that he would use his signatory authority in the account only for the benefit of plaintiff and Spurgeon Kelley. An element of fraud is intent to deceive. ***Delgado v. Costello***, 580 P.2d 500, 502 (N.M. App. 1978) (citing ***Sauter v. St. Michael's College***, 374 P.2d 134, 138 (N.M. 1962)); ***Maxey v. Quintana***, 499 P.2d 356, 360 (N.M. App.), ***cert. denied***, 499 P.2d 255 (N.M. 1972). As noted above, there is no evidence that defendant fraudulently induced plaintiff to create a multi-party account without limitation on his rights to access the funds deposited in the account. Nor does the record support an inference that defendant intended to deceive anyone in connection with withdrawing the money from the account following Spurgeon Kelley's death. Moreover, plaintiff has presented no authority under New Mexico law or otherwise to substantiate that such horatory understandings as defendant suggested he had with respect to the account are legally enforceable otherwise.

13. Similarly, plaintiff has failed to prove the elements of a prima facie tort under New Mexico law. "Prima facie tort occurs when a lawful act is conducted with an intent to injure and without sufficient economic or social justification, resulting in injury." ***Lexington Insurance Co. v. Rummel***, 945 P.2d 992, 995 (N.M. 1997). The linchpin of the tort is the intent to injure, and plaintiff bears a heavy burden to establish this

element.  *See id.*  To do so, she must show that defendant had an actual intention to cause her injury, not merely an intent to commit the act that resulted in injury.  *Id.*  Nor is it sufficient to show that the injury was a natural and foreseeable consequence of the act, or that defendant showed "mere insensitivity towards the injured party."  *Id.*

      14.  Plaintiff has failed to sustain this burden.  There is no evidence that defendant's lawful act of withdrawing funds from the account was undertaken with the actual intent to injure plaintiff as that element is conceived of under New Mexico law.  Without such proof, the claim fails.

      15.  Finally, plaintiff has not proven her claims for violation of the New Mexico Uniform Power of Attorney Act or breach of fiduciary duty.  The fiduciary duties defendant owed plaintiff under the 1999 power of attorney were explicitly and unequivocally revoked by the power of attorney she executed in favor of her natural children in November, 2003.  *See* **N.M. STAT. ANN.** §§ 46B-1-110(A) & 46B-1-110(B) (1978) (noting that power of attorney and agent's authority thereunder terminate when revoked by principal).  Thereafter, defendant had no further fiduciary obligations to plaintiff as her attorney-in-fact or otherwise, regardless of his ignorance of the revocation for several years thereafter.

      16.  Contrary to plaintiff's arguments, these claims are not saved by **N.M. STAT. ANN**. § 46B-1-110(D).  That section provides that

> [t]ermination of an agent's authority or of a power of attorney
> is not effective as to the agent or another person that,
> without actual knowledge of the termination, acts in good
> faith under the power of attorney.  An act so performed,
> unless otherwise invalid or unenforceable, binds the principal
> and the principal's successors in interest.

Clearly, this section prevents the principal from disclaiming liability for actions taken by an attorney-in-fact who acts in the good faith belief that he continues to have the authority granted by the power of attorney. This statutory provision is intended to protect the attorney-in-fact for actions taken in good faith, not create ongoing fiduciary liability under a previously revoked power of attorney for actions allegedly done in the absence of good faith.

### III.  ORDERS

**THEREFORE, IT IS ORDERED**, as follows:

1. That plaintiff's claims for violation of the Uniform Power of Attorney Act, conversion, fraud, breach of fiduciary duty, and prima facie tort under New Mexico law are **RESOLVED** against plaintiff, Edrice Kelley, through her conservators, Celia Judkins, Marie Taylor, and Joan Sullivan Cowan, and in favor of defendant, Neal Kelley;

2. That judgment **SHALL ENTER** on behalf of defendant, Neal Kelley, against plaintiff, Edrice Kelley, through her conservators, Celia Judkins, Marie Taylor, and Joan Sullivan Cowan, as to all claims for relief and causes of action; provided, that the judgment shall be with prejudice; and

3. That defendant is **AWARDED** his costs, to be taxed by the Clerk of the Court pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated December 8, 2011, at Denver, Colorado.

                                         **BY THE COURT:**

*Bob Blackburn*
Robert E. Blackburn
United States District Judge